**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SELECTIVE WAY INSURANCE COMPANY** and **FEDERATED MUTUAL INSURANCE COMPANY,**

               Plaintiffs,          1:07-cv-457
                                                   (GLS/RFT)

      v.

**NUTONE, INC.,**

               Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| *Selective Way Ins. Co.* | |
| Office of Robert A. Stutman, P.C. | JESSE M. COHEN, ESQ. |
| 501 Office Center Drive | KEVIN P. SMITH, ESQ. |
| Suite 300 | MICHAEL J. REILLY, ESQ. |
| Fort Washington, PA 19034 | THOMAS UNDERWOOD, ESQ. |
| | |
| *Federated Mutual Ins. Co.* | |
| Cozen, O'Connor Law Firm | ERICK J. KIRKER, ESQ. |
| 1900 Market Street | |
| 3rd Floor, The Atrium | |
| Philadelphia, PA 19103 | |
| | |
| **FOR THE DEFENDANT:** | |
| Goldberg, Segalla Law Firm | KENNETH M. ALWEIS, ESQ. |
| 5789 Widewaters Parkway | LISA MARIE ROBINSON, ESQ. |
| Syracuse, NY 13214 | |

**Gary L. Sharpe**
**District Court Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiffs Selective Way Insurance Company, as subrogee of Countryside Marts, Inc., and Federated Mutual Insurance Company, as subrogee of Red-Kap Sales, Inc., brought this action against defendant Nutone, Inc., asserting claims for strict products liability, negligence, nuisance, and breach of warranty. (*See* Compl., Dkt. No. 1.) Pending are Nutone's motions to preclude Selective and Federated's experts, for sanctions based on spoliation, and for summary judgment. (Dkt. No. 39.) For the reasons that follow, Nutone's motion to preclude is denied, Nutone's motion for sanctions is denied, and Nutone's motion for summary judgment is granted in part and denied in part.

### **II. Background**

On January 6, 2006, a fire occurred in the Countryside Mart and Mobil gas station located in East Berne, New York. (*See* Def. SMF ¶ 1, Dkt. No. 39:27.) At the time of the fire, Jennifer Wright was working at the Countryside Mart. (*See id.* at ¶ 6.) At approximately 4:00 pm, after going into the bathroom twice before and finding nothing out of the ordinary, Ms. Wright entered the bathroom to discover flames emanating from the ceiling

2

fan, with melted plastic dripping down. (*See id.* at ¶¶ 7-10.) Wright then yelled to her coworker, Sarah Densmore, to call 911, which she did. (*See id.* at ¶¶ 11-12.) Wright thereafter looked back into the bathroom to find that the fire had grown, consisting of orange and red flames and with more pieces of melted material coming down. (*See id.*) Wright and Densmore then left the building, after which the lights and power went off and smoke began to emerge from the building. (*See id.* at ¶¶ 11-12, 14.)

Subsequently, Countryside Marts made a claim under its insurance policy with Selective Way Insurance Company for the damages sustained as a result of the fire. (*See* Compl. ¶ 19, Dkt. No. 1.) Pursuant to the policy, Selective made over $150,000 in payments to Countryside Marts and thereby became subrogated to the rights of recovery possessed by Countryside Marts. (*See id.*) Likewise, Red-Kap Sales, Inc., as the owner of the property, made a claim under its insurance policy with Federated Mutual Insurance Company for the damages it sustained in the fire. (*See id.* at ¶ 20.) Federated thereafter made payments exceeding $150,000 to Red-Kap pursuant to the insurance policy, whereby Federated became the subrogee of Red-Kap's rights of recovery. (*See id.* at ¶ 20.)

On April 27, 2007, Selective and Federated filed suit against Nutone,

Inc., alleging that the January 6, 2006 fire was caused by a defective bathroom fan/light that was designed, manufactured, distributed, and placed into the stream of commerce by Nutone. (*See* Compl. ¶¶ 13-17, Dkt. No. 1.) Based on these allegations, Selective and Federated asserted claims against Nutone for strict liability, negligence, nuisance, and breach of warranty. (*See id.* at ¶¶ 21-43.)

Following discovery, Nutone moved for summary judgment, contending that there is no evidence of a design defect, a manufacturing defect, or defective warnings, and that the breach of warranty claim is time barred. (*See* Dkt. No. 39; *see also* Def. Mem. of Law at 13-16, Dkt. No. 39:28.) In addition, Nutone sought to preclude the testimony of experts Patrick Dugan and Nathaniel Johnson. (*See* Dkt. No. 39.)

### III.  Standard of Review[1]

The standard for the grant of summary judgment is well established and will not be repeated here. For a full discussion of the standard, the

---

[1]Neither party disputes that New York law controls here since the underlying events occurred in New York and the property at issue is located in New York. (*See* Pl. Resp. Mem. of Law at 7, Dkt. No. 47:18; *see also* Def. Mem. of Law at 14, Dkt. No. 39:28.) Accordingly, the court will apply New York State substantive law and federal procedural law. *See Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996); *see also Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997).

court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

## IV. Discussion

### A. Preclusion of Experts

Nutone seeks to preclude the expert testimony of Patrick Dugan, arguing that Mr. Dugan has no experience regarding product design and that he failed to have his theory regarding the fire's origin tested. (*See* Def. Mem. of Law at 10-13, Dkt. No. 39:28.) Nutone also seeks to preclude proposed expert Nathaniel Johnson from testifying on the grounds that he lacks the appropriate technical experience, relies on untested and uncorroborated theories, and, as to the design defect claim, has failed to test alternative designs or identify other manufacturers of similar products with a safer alternative design. (*See id.* at 6-10.)

As to Mr. Dugan, his testimony is admissible for the purpose for which it is being offered, namely, to render an expert opinion in the area of fire origin and cause. Contrary to Nutone's contentions, there is nothing to suggest that Mr. Dugan's testimony is being offered to address issues relating to product design. Instead, as outlined at length by Selective and Federated, (*see* Pls. Resp. Mem. of Law at 14-17, Dkt. No. 47:18), and as

5

evidenced by Mr. Dugan's expert report, deposition, and curriculum vitae, (*see* Alweis Aff., Def. Exs. E & L, Dkt. Nos. 39:9 & 39:20; Reilly Aff., Pls. Ex. H, Dkt. No. 47:11), Mr. Dugan is qualified to testify as an expert in the field of fire origin and cause investigation. *See* FED. R. EVID. 702; *see also Nimely v. City of New York*, 414 F.3d 381, 395-96 (2d Cir. 2005); *Lappe v. Am. Honda Motor Co.*, 857 F. Supp. 222, 227 (N.D.N.Y. 1994). Notably, Nutone concedes, "[a]t best, Dugan is qualified to testify to areas of origin in some fires." (Def. Mem. of Law at 10, Dkt. No. 39:28.)

Equally important, at this juncture, the court is satisfied that Mr. Dugan's opinions are relevant, are based on a reliable methodology, and are consistent with that methodology. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("The objective of [*Daubert*'s gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony."). Specifically, Mr. Dugan has reported that his investigation included an inspection of the scene of the fire on multiple occasions, an analysis of burn, smoke, and heat patterns, interviews of the lay witnesses, emergency responders, and official investigators, and an examination of the building's internal and external electrical service and all potential ignition sources. This investigation and the documentation thereof appears to have been

6

conducted in accordance with the professional standards and scientific methodology used by fire investigation experts, which is set forth in the National Fire Protection Association's NFPA 921: GUIDE FOR FIRE AND EXPLOSION INVESTIGATIONS. *See Royal Ins. Co. of Am. v. Joseph Daniel Constr., Inc.*, 208 F. Supp. 2d 423, 426-27 (S.D.N.Y. 2002) (recognizing the NFPA 921 as a generally accepted standard in fire investigations); *Travelers Prop. & Cas. Corp. v. Gen. Elec. Co.*, 150 F. Supp. 2d 360, 366 (D. Conn. 2001) (same). Therefore, for these reasons, and because further scrutiny can be had on cross-examination, the court concludes that Nutone's motion to preclude Mr. Dugan's expert testimony is denied.

With regard to Mr. Johnson, the court finds that he is qualified to testify as an expert in the field of electrical engineering and his technical experience is sufficiently suited to render an opinion concerning, among other things, design and manufacturing defects. *See* FED. R. EVID. 702; *see also Nimely*, 414 F.3d at 395-96. In evaluating defectiveness, Mr. Johnson investigated the relevant evidence, performed a series of germane tests, and based his opinions on reliable and generally accepted methodologies. (*See* Johnson Report at 3-4, Def. Ex. E, Dkt. No. 39:7.) And while Nutone is technically correct insofar as Johnson does not appear

7

to have tested alternative prototype designs, he nonetheless opined that a safer alternative design exists, stated that such a design is neither new nor novel, described the nature and features of the design, and provided a cursory cost analysis. (*See* Johnson Dep. at 93-97, Def. Ex. K, Dkt. No. 39:19.) And contrary to Nutone's assertions, Mr. Johnson has identified other similar products that are manufactured with a safer alternative design. (*See id.* at 87-93.) Therefore, having reviewed Mr. Johnson's expert report and deposition testimony, the court concludes that his expert testimony is generally admissible and accordingly denies Nutone's motion to preclude Mr. Johnson's testimony on the issues of design and manufacturing defect.

**B.** **Spoliation**

In passing, Nutone raises the issue of spoliation as a basis for sanctions against Federated and Selective. (*See* Def. Mem. of Law at 10-12, Dkt. No. 39:28.) A party is obligated to preserve evidence in its possession and not engage in spoliation[2] when it "has notice that the evidence is relevant to litigation ... [or] when a party should have known

---

[2]"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citation omitted).

8

that the evidence may be relevant to future litigation." *Kronisch v. United States*, 150 F.3d 112, 126-27 (2d Cir. 1998) (citations omitted), *overruled on other grounds*, *Rotella v. Wood*, 528 U.S. 549 (2000). Thus, every party has "a duty to preserve what it knows, or reasonably should know, is relevant in the action, ... is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991) (internal quotation marks and citation omitted).

Here, Nutone's assertions of spoliation are vague and undefined. In essence, Nutone claims that Selective and Federated did not collect wiring from certain parts of the building and "preserved only that evidence they believed would establish their theory of liability [and] did not collect the other evidence that might have established an alternative cause." (Def. Mem. of Law at 10-12, Dkt. No. 39:28.) In response, Selective and Federated contend that they preserved the entire fire scene, participated in a joint scene inspection with Nutone, notified Nutone about what evidence they intended to preserve, and gave Nutone the opportunity to request that additional evidence be preserved. (*See* Pls. SMF ¶¶ 63, 66-67, 97-105, Dkt. No. 47; *see also* Pls. Mem. of Law at 26-27, Dkt. No. 47:18.) Thus,

9

Selective and Federated took adequate measures to preserve relevant evidence, and afforded Nutone ample opportunity to identify other evidence requiring preservation—an opportunity which Nutone failed to avail itself of. Without more, Nutone has failed to allege any spoliatory conduct that would warrant the imposition of sanctions.

## C.    Strict Products Liability

Under the doctrine of strict products liability, in order to maintain an action against the manufacturer of a defective product, a plaintiff must establish that "the defect was a substantial factor in bringing about his injury or damages." *Codling v. Paglia*, 32 N.Y.2d 330, 342 (N.Y. 1973). In doing so, the plaintiff is required to make a threshold showing:

> (1) that at the time of the occurrence the product [was] being used ... for the purpose and in the manner normally intended, (2) that ... the user of the product ... would not by the exercise of reasonable care have both discovered the defect and perceived its danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages.

*Id.* New York law provides several bases upon which strict products liability may rest. "[A] plaintiff may assert that the product is defective because of a mistake in the manufacturing process or because of an improper design or because the manufacturer failed to provide adequate

10

warnings regarding the use of the product." *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 106-07 (N.Y. 1983) (citations omitted).

**1.     Design Defect**

To make out a prima facie case of strict liability for a product's design defects, "the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury." *Id.* at 107. In making this showing, the burden is on the plaintiff "to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner." *Id.* at 108. To prove the existence of a feasible alternative design, the plaintiff's expert may either (1) show that an alternative design is "within the realm of practical engineering feasibility" based on such factors as utility, cost, and safety, or (2) identify makers of similar equipment who use the proposed alternative design. *Rypkema v. Time Mfg. Co.*, 263 F. Supp. 2d 687, 692 (S.D.N.Y. 2003); *see also Maxwell v. Howmedica Osteonics Corp.*, --- F. Supp. 2d ----, 2010 WL 1930966, at *5 (N.D.N.Y. May 10, 2010) ("[A] plaintiff must demonstrate that the alternative design would have [led] to

overall improved safety ... which requires a risk-utility balancing."). Lastly, the plaintiff must prove that the defective design was the proximate cause—i.e., a "substantial cause"—of the injury alleged, and that the alternative design would have prevented the accident. *See Galletta v. Valmet, Inc.*, No. 5:04-CV-0313, 2007 WL 963288, at *4 (N.D.N.Y. Mar. 30, 2007).

In turn, the burden shifts to the manufacturer "to show that the product is a safe product ... whose utility outweighs its risks [such that] the risks are reduced to the greatest extent possible while retaining the product's inherent usefulness at an acceptable cost." *Voss*, 59 N.Y.2d at 108 (citations omitted). Ultimately, "[l]iability attaches when the product, as designed, presents an unreasonable risk of harm to the user." *Id.* at 107.

Here, there is sufficient evidence from which a reasonable jury could find that Nutone marketed a bathroom fan/light that was not reasonably safe and that the defective design of the fan/light was a substantial factor in causing the January 6, 2006 fire. Specifically, Selective and Federated have offered evidence suggesting that there was a substantial likelihood that the fan/light could cause harm, that the fan/light was in fact a substantial cause of the fire, and that there was an alternative design

12

available. Furthermore, as discussed above with regards to Mr. Johnson's testimony, there is ample evidence to generate a genuine dispute of fact about whether the alternative design was feasible as to its cost, enhanced safety, and general utility. Accordingly, the court denies Nutone's motion for summary judgment on Selective and Federated's claim of design defect.

## 2. Manufacturing Defect

To make out a prima facie case of strict liability for a manufacturing defect, "a plaintiff must establish that the product was not built to specification or that it did not conform to the manufacturer's intended design." *Minda v. Biomet, Inc.*, 182 F.3d 900, 900 (2d Cir. 1999) (unpublished) (citing *Van Deusen v. Norton Co.*, 204 A.D.2d 867, 868 (3d Dep't 1994)). "[The] plaintiff may rely upon the circumstances of the accident and proof that the product did not perform as intended." *Brown v. Borruso*, 238 A.D.2d 884, 885 (4th Dep't 1997) (citations omitted). In other words, if the plaintiff proves that the product did not perform as intended and has excluded all causes that are not attributable to the manufacturer's conduct, then "the fact finder may, even if the particular defect has not been proven, infer that the accident could only have occurred due to some

13

defect in the product or its packaging." *Halloran v. Va. Chems. Inc.*, 41 N.Y.2d 386, 389 (N.Y. 1977) (citations omitted).

In response, the manufacturer must establish that a manufacturing defect in the product did not cause the injuries alleged. *Brown*, 238 A.D.2d at 885. Ultimately, though, if the manufacturer presents evidence that the accident was "not necessarily attributable to a defect," *Winckel v. Atl. Rentals & Sales, Inc.*, 159 A.D.2d 124, 127 (2d Dep't 1990), the plaintiff has the burden "to demonstrate the existence of a triable issue as to whether in fact there was a defect," *Minda*, 182 F.3d at 900. To meet this burden, the plaintiff "must submit some direct evidence that a defect existed ... [and] cannot rely solely upon the occurrence of the accident." *Brown*, 238 A.D.2d at 885.

For reasons similar to those that countenance against summary judgment on the design defect claim, the court concludes that summary judgment on Selective and Federated's manufacturing defect claim would be inappropriate. Based on the current record, it is for the factfinder to resolve the extent to which other potential causes can be excluded and whether a defect actually existed. Therefore, because factual disputes remain regarding whether the January 6, 2006 fire resulted from a

14

manufacturing defect, Nutone's motion for summary judgment is denied.

### 3. Failure to Warn and Breach of Warranty

In light of Selective and Federated's concession that their breach of warranty claim contained in Count Four, and their failure to warn claims constituting part of Counts One, Two, and Three should be dismissed, (*see* Pl. Resp. Mem. of Law at 27-28, Dkt. No. 47:18), the court grants Nutone's motion for summary judgment insofar as the breach of warranty and failure to warn claims are dismissed.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Nutone's motion for summary judgment (Dkt. No. 39) is **GRANTED** insofar as Selective and Federated's claims for breach of warranty and failure to warn are **DISMISSED**; and it is further

**ORDERED** that Nutone's motion for summary judgment (Dkt. No. 39) is **DENIED** as to the remaining claims; and it is further

**ORDERED** that Nutone's motion to preclude Selective and Federated's experts (Dkt. No. 39) is **DENIED**; and it is further

**ORDERED** that Nutone's motion for sanctions based on spoliation (Dkt. No. 39) is **DENIED**; and it is further

15

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 25, 2010
Albany, New York

_____
United States District Court Judge